UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Commodity Futures Trading Commission,

        Plaintiff(s),

-against-

Nicholas Gelfman,

        Defendant(s).

17-cv-7181 (PKC)

**ANSWER**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/12/17
```

# I
## ADMISSIONS AND DENIALS

1. Defendant denies that he operated a Bitcoin Ponzi scheme as alleged in sentence 1 of paragraph 1. Defendant denies that more than approximately $600,000 from at least eighty customers was obtained as alleged in sentence 2 of paragraph 1. Defendant denies that the strategy was fake, the purported performance reports were false, and consisted of other customers' misappropriated funds.

2. Defendant denies that customers were fraudulently solicited by making false and misleading claims and omissions about the performance and reliability of Jigsaw. Defendant denies other allegations in paragraph 2 of the complaint.

3. Defendant denies that he staged a fake computer hack that caused the loss of nearly all customer funds. Defendant denies that this was a lie. Defendant denies trying to conceal the full extent of the fraud. Defendant denies that he claimed he had stolen only $25,000 Defendant denies that this too was a lie. Defendant denies that he misappropriated virtually all of the approximately $600,000 solicited from GBI Customers. Defendant denies that as a result, GBI Customers have lost most if not all of their invested funds due to fraud and misappropriation.

4. Defendant denies that he was engaged, is engaging, or is about to engage in fraudulent acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§

1–26 (2012), and Commission Regulations ("Regulations"), 17 C.F.R. pt. 1–190 (2017), specifically Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017).

5. Defendant admits that pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin such acts and practices and compel compliance with the Act. Defendant admits that the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6. Defendant denies that he is likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices.

7. Defendant denies that this Court has jurisdiction of this action as alleged in paragraph 7.

8. Defendant admits that venue properly lies with the Court because the defendant is found in, and inhabits in this District. Defendant denies that acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District.

9. Defendant admits that Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") is an independent federal regulatory agency as alleged in paragraph 9.

10. Defendant does not know if Gelfman Blueprint, Inc. is a New York corporation based in Staten Island, New York. Defendant admits GBI was incorporated on August 7, 2014. Defendant does not know if GBI's last known address is 533 Wilson Avenue, Staten Island, NY 10312. Defendant does not know if GBI has been registered with the Commission.

11. Defendant admits he is a resident of Brooklyn, New York. Defendant admits he was the CEO and Head Trader of GBI. Defendant admits he has never been registered with the Commission.

12. Defendant denies that Bitcoin and other virtual currencies are encompassed in the definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012).

13. Defendant denies that during the Relevant Period, he solicited and received more than approximately $600,000 from at least eighty GBI Customers, who invested amounts ranging from a few hundred dollars to tens of thousands of dollars, for the purpose of entering into contracts of sale of Bitcoin, a virtual currency, through electronic web-based Bitcoin trading platforms based in various states and countries.

14. Defendant denies that he solicited customers in Manhattan, Staten Island, and elsewhere to invest in GBI's fund.

15. Defendant denies that he solicited customers, and received and directed deposits, withdrawals, and transfers of GBI Customer funds on behalf of GBI.

16. Defendant denies that solicitations to potential GBI Customers to participate in GBI's pooled fund included false and misleading representations and omissions of material facts—in short, lies and deceit—about the profitability and safety of investing in GBI.

17. Defendant denies that he made these false and misleading representations and omissions of material facts to potential customers during the Relevant Period through the GBI website.

18. Defendant denies that during the Relevant Period, GBI's website touted the high investment performance of the high-frequency, algorithmic trading computer program (or "bot") named Jigsaw. Defendant denies that GBI's website claimed that GBI's Jigsaw trading strategy both generated monthly profits and protected against risk as alleged in paragraph 18.

19. Defendant denies that these statements were false and misleading representations and omissions of material facts. Defendant denies that GBI Customers did not average the 7-9% monthly increase in Bitcoin as alleged in paragraph 19.

20. Defendant denies that during the Relevant Period, Defendants' primary Bitcoin trading account for the Jigsaw trading strategy was at an international virtual currency exchange, under the name of TMJigsaw ("Defendants' Jigsaw trading account").

21. Defendant denies that the account records of Defendants' Jigsaw trading account reveal only infrequent and unprofitable trading. Defendant denies that during 2015, Defendants' Jigsaw trading account records reveal trading on only 17 calendar days that incurred approximately 185 Bitcoin in losses.

22. Defendant denies that he exclusively controlled and had access to Defendants' Jigsaw trading account.

23. Defendant denies that during the Relevant Period, GBI's website also touted GBI Customers' access to their current balances, deposits, and withdrawals though the GBI website's "interactive customer dashboard."

24. Defendant denies that these statements constituted false and misleading representations and omissions of material facts. Defendant denies that GBI Customers could not access their true current balances, deposits, and withdrawals through the website's "interactive customer dashboard." Defendant denies that the figures reflecting large gains provided through the dashboard were false.

25. Defendant denies that these pages on GBI's website touting GBI's high investment performance, strategy, and account transparency were publicly available.

26. Defendant denies that he made false and misleading representations and omissions of material facts to potential customers during the Relevant Period through GBI marketing materials.

27. Defendant denies that Defendants' marketing materials used for soliciting customers touted the high investment performance of Jigsaw as alleged in paragraph 27.

28. Defendant admits that using the then-prevailing exchange rate, 2,367 Bitcoin was equivalent to approximately $660,000, and 717 Bitcoin was equivalent to approximately $200,000.

29. Defendant denies that these and similar statements about Defendants' trading performance and Bitcoin under management were false and misleading representations and omissions of material facts.

30. Defendant denies that Defendants' Jigsaw trading account records reveal only infrequent trading that resulted in trading losses.

31. Defendant denies that Defendants' Bitcoin under management was far, far less. Defendant denies that Defendants' Jigsaw trading account records show a Bitcoin balance of less than 270 Bitcoin as of early July 2015 (equivalent to approximately $73,000 using the then-prevailing exchange rate), no Bitcoin trading activity at all after early July 2015, and a Bitcoin balance of zero beginning in early August 2015.

32. Defendant denies that he made false and misleading representations and omissions of material facts to potential customers during the Relevant Period through various internet social media websites, such as Instagram and Facebook as alleged in paragraph 32.

33. Defendant denies that these and similar statements that Jigsaw offered a 2% weekly Bitcoin return were false and misleading representations and omissions of material facts. Defendant denies that Defendants' Jigsaw trading account records reveal only infrequent trading and substantial Bitcoin losses.

34. Defendant does not know if these social media solicitations touting GBI's high investment performance, strategy, and account transparency were publicly available.

35. Defendant denies that he made false and misleading representations and omissions of material facts to potential customers during the Relevant Period through internet chat room posts as alleged in paragraph 35.

36. Defendant denies that these and similar statements that Defendants provided customers with a 7-9% monthly return, after commission, over an extended time period, were false

and misleading representations and omissions of material facts. Defendant denies that Defendants' Jigsaw trading account records reveal only infrequent trading and substantial Bitcoin losses.

37. Defendant does know if during the Relevant Period, such internet chat room solicitations touting GBI's high investment performance and strategy were publicly available.

38. Defendant denies that he made false and misleading representations and omissions of material facts to potential customers during the Relevant Period in person.

39. Defendant denies that these representations and omissions were false and misleading as alleged in paragraph 39.

40. Defendant denies that in or around December 2014, in Manhattan, he and another GBI officer made such false and misleading statements about GBI's performance, the safety of the investment, and GBI Customers' ability to monitor their investments, while soliciting a potential customer in person. Defendant admits that this person then became a GBI Customer, over time investing more than $50,000. Defendant denies that all of which was misappropriated by Defendants.

41. Defendant does know if, in or around April 2015, in Brooklyn, agents of GBI using information provided by him made such false and misleading statements about GBI's performance, the safety of the investment, and GBI Customers' ability to monitor their investments, while soliciting a potential customer in person. Defendant does know if this person then became a GBI Customer, over time investing more than $60,000. Defendant denies that all of which was misappropriated by Defendants.

42. Defendant does know if, in or around June 2015, in Staten Island, agents of GBI using information provided by him made such false and misleading statements about GBI's performance, the safety of the investment, and GBI Customers' ability to monitor their investments, while soliciting a potential customer in person. Defendant does know if this person then became a GBI Customer, over time investing more than $40,000. Defendant denies that all of which was misappropriated by Defendants.

43. Defendant denies that such statements in person by him to these and numerous other potential customers were false and misleading representations and omissions of material facts. Defendant denies that Defendants' Jigsaw trading account records reveal only infrequent trading that resulted in substantial Bitcoin losses, and GBI Customers could not verify and monitor their investments online, such as through logging into GBI website's customer "dashboard," since the information Defendants provided therein was falsified by Defendants.

44. Defendant denies that he made these false and misleading representations and omissions of material facts to potential customers as well as existing GBI Customers on the GBI website, in marketing materials, in internet social media and chatroom websites, and in person knowingly or with reckless disregard for the truth.

45. Defendant denies that he was a fiduciary of GBI Customers.

46. Defendant denies that during the Relevant Period he perpetuated a fraudulent scheme as alleged in paragraph 46.

47. Defendant admits that once GBI Customers had invested in GBI, Defendants provided GBI Customers with password-protected access to restricted areas of Defendants' website. Defendant denies that GBI Customers could access and view account statements and reports purporting to show their account balances and trading profits or losses.

48. Defendant denies that during the Relevant Period, these statements and reports to GBI Customers were false and misleading because the reported trading conducted on behalf of customers did not occur. Defendant denies that the account and performance statements misrepresented, and provided false and misleading descriptions of, trading activity and account balances.

49. Defendant does not know if, on or around August 1, 2015, one GBI Customer logged into the GBI website and received from the GBI "dashboard" an account statement that the customer's investment balance was 197.719 Bitcoin, worth $58,297. Defendant does not know if this reported balance reflected customer profits (net of fees to GBI and a

subsequent deposit) of more than 38%, achieved in less than two months, based on the customer's initial investment of approximately $40,000.

50. Defendant denies that this statement and report to the GBI Customer were false and misleading. Defendant denies that the reported balance did not exist, and the reported profits were illusory. Defendant denies that during that two-month period, Defendants' Jigsaw trading account records reveal trading on only four calendar days that resulted in thousands of dollars in losses.

51. Defendant denies that during the Relevant Period, he provided account balance and profitability information by telephone to GBI Customers.

52. Defendant denies that the GBI Customer account balance and profitability information provided by Defendants to GBI Customers by telephone was false and misleading because the supposed trading conducted on behalf of investors did not occur, the balances did not exist, and the reported profits were illusory. Defendant denies that Defendants' Jigsaw trading account records reveal only infrequent trading and substantial Bitcoin losses.

53. Defendant denies that in or around July to October 2015, Defendants obtained a series of one-page documents from an accountant stating GBI's assets under management, specifically, the amount of GBI's balance at a particular Bitcoin exchange as of a particular date.

54. Defendant does not know if, these documents obtained from the accountant reflected that GBI's assets under management held at the specific exchange, an international platform advertised as the "world's largest and most advanced cryptocurrencies exchange," were increasing in value each month and, as of October 2015, were in excess of $840,000.

55. Defendant denies that these statements were false and misleading representations and omissions of material facts.

56. Defendant denies that Defendants' account balance was far, far less as alleged in paragraph 56.

57. Defendant denies that Defendants fraudulently obtained the one-page account-balance documents from the accountant by providing the accountant with information Defendants knew to be misleading and false, such as false account or balance statements that he had generated with the intent to deceive.

58. Defendant denies that referring to this accountant and these documents, he represented to potential and actual GBI Customers that GBI had monthly CPA audited results and asserted balances under management according to the last CPA audit.

59. Defendant denies that these statements were false and misleading representations and omissions of material facts.

60. Defendant does not know if, this accountant was not a CPA.

61. Defendant denies that this accountant never performed an audit of GBI.

62. Defendant denies that the account balance documents stated false balances because the information that Defendants provided to the accountant was false and intended to mislead.

63. Defendant denies that he made these and other false and misleading representations and omissions of material facts to potential and actual GBI Customers concerning trading activity and results, account balances, and CPA audits knowingly or with reckless disregard for the truth.

64. Defendant denies that between approximately January 2014 and December 2015, Defendants received in excess of approximately $600,000 from more than 80 GBI Customers.

65. Defendant denies that during the Relevant Period, Defendants misappropriated almost all of these GBI Customers' funds for improper and unauthorized uses, such as to pay GBI business expenses and to wrongfully enrich him.

66. Defendant denies that during the Relevant Period, GBI charged GBI Customers fees in the form of large percentages of Bitcoin trading profits.

67. Defendant denies that nearly all GBI Customers were charged fees of approximately 50-65% of those purported trading profits.

68. Defendant denies that Defendants' representations of trading results and profits for or on behalf of GBI Customers were false. Defendant denies that all fees deducted by Defendants from GBI Customers' funds based on these false profits in fact were GBI Customer funds that Defendants misappropriated from GBI Customers.

69. Defendant denies that in or around October 2015, he told other GBI officers that a computer hack had caused GBI to lose all or nearly all of GBI Customers' investments. Defendant does not know if Defendants then conveyed this story to GBI Customers to explain the loss of their investments.

70. Defendant does not know if, Defendants notified a GBI Customer, who had invested more than $50,000 beginning in December 2014, and whose investment in GBI's fund had purportedly generated tens of thousands of dollars of profits through Jigsaw, of the supposed hack and that all of the GBI Customer's investments were gone. Defendant does not know if, this GBI Customer was never repaid any of the investment.

71. Defendant denies that Defendants' statements about the supposed computer hack causing the loss of all or nearly all GBI's Bitcoin were false.

72. Defendant denies that there was no hack in October 2015 causing massive losses. Defendant denies that Defendants' Jigsaw trading account records reveal that the account had had a Bitcoin balance of zero since early August 2015.

73. Defendant denies that he had misappropriated nearly all of the GBI Customers' funds for his own financial benefit and to transfer the funds illegally to other customers of the Ponzi scheme, and had invented the falsehood of the "hack" to conceal this misappropriation.

74. Defendant denies that any profits received by GBI Customers consisted of funds that Defendants misappropriated from other GBI Customers, in the nature of a Ponzi scheme.

75. Defendant denies that in or around January 2016, he confessed to other GBI officers, such as the Chief Operating Officer and the Chief Compliance Officer, that he had stolen approximately $25,000 from GBI.

76. Defendant denies that he had misappropriated far in excess of $25,000 in GBI Customer funds. Defendant denies that he misappropriated nearly all GBI Customer funds.

77. Defendant admits that on April 22, 2016, pursuant to an investigatory subpoena, he appeared before the Commission for testimony concerning GBI.

78. Defendant admits that in response to Division staff's questions at this testimony, he invoked his Fifth Amendment privilege against compelled self-incrimination.

79. Defendant denies that Defendants' website and marketing materials identified him as CEO and Head Trader of GBI. Defendant denies that he solicited investors on behalf of GBI. Defendant denies that he created and controlled the performance and investment information in solicitation materials. Defendant denies that he created and controlled the content of GBI's website. Defendant denies that he oversaw and controlled GBI's trading of Bitcoin. Defendant admits that he was a signatory to GBI bank accounts. Defendant denies that he generated account information on behalf of GBI.

80. Defendant denies that through his actions as CEO and head trader overseeing Bitcoin trading by GBI, managing the purported Jigsaw bot, and calculating GBI purported performance results, and thus profits and fees, as well as through his additional actions of marketing GBI to potential investors, soliciting investors, providing information to the accountant during reviews of GBI's assets under management, and providing account information to GBI Customers, he acted in the scope of his employment and on behalf of GBI.

81. Defendant admits that Paragraphs 1 through 80 are re-alleged and incorporated herein by reference.

82. Defendant admits to the definition of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) as provided in paragraph 82.

83. Defendant admits to the definition of 180.1(a), 17 C.F.R. § 180.1(a) (2017) as provided in paragraph 83.

84. Defendant denies that during the Relevant Period, as described above, he violated Section 6(c)(1) of the Act and Regulation 180.1(a) as alleged in paragraph 84. Defendant denies each statement and fact alleged in paragraph 84.

85. Defendant denies that he violated Section 6(c)(1) of the Act and Regulation 180.1(a) as alleged in paragraph 85.

86. Defendant denies that he engaged in the acts and practices described above willfully, intentionally, or recklessly.

87. Defendant denies that he violated Section 6(c)(1) of the Act and Regulation 180.1(a).

88. Defendant denies that the acts, omissions, and failures described in this Complaint occurred within the scope of his agency, employment, and office at GBI. Defendant denies that GBI is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), as principal for its agent's acts, omissions, or failures in violation of the Section 6(c)(1) of the Act and Regulation 180.1(a).

89. Defendant denies that at all times relevant to this Complaint, he controlled GBI, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, GBI's conduct constituting the violations of GBI described in this Count. Defendant denies that pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), he is liable for GBI's violations of Section 6(c)(1) of the Act and Regulation 180.1(a).

90. Defendant denies that each act of (1) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, untrue or misleading statements of material fact, or omitting to state material facts necessary to make the statements not untrue or misleading; and (3) engaging, or attempting to engage, in a fraudulent or deceitful act, practice, or a course of business,

including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act and Regulation 180.1.

## II
## DEFENSES

**FIRST DEFENSE:**

This Court lacks jurisdiction over this action. The Commission is not authorized to seek relief as Bitcoin and other virtual currencies are not commodities under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012). Congress has not ruled on classification of Bitcoin and other virtual currencies. There have been multiple agencies attempting to claim authority over bitcoin. The IRS stated "that virtual currency is treated as property". In the case of U.S. Securities and Exchange Commission v. Trendon T. Shavers et al., case number 4:13-cv-00416, in the United States District Court for the Eastern District of Texas, Federal Magistrate Judge Amos L. Mazzant has ruled that bitcoins are "a currency or form of money."

**WHEREFORE** defendant asks this Court to dismiss the complaint and enter judgment in favor of defendant.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 12 day of October, 2017.

Nicholas Gelfman
1612 Kings Highway #17
Brooklyn, NY 11229
(347) 903-2618