UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

            v.

GELFMAN BLUEPRINT, INC., and NICHOLAS
GELFMAN,

                Defendants.

Case No. 17-7181 (PKC)

ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR FINAL JUDGMENT BY DEFAULT, PERMANENT
INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER STATUTORY AND
EQUITABLE RELIEF AGAINST DEFENDANT GELFMAN BLUEPRINT, INC.**

## Table of Contents

I. BACKGROUND ........................................................................................................... 2

II. FACTS ......................................................................................................................... 2

III. ARGUMENT ............................................................................................................... 5

    A. Final Judgment by Default Is Warranted Against Defendant GBI Under Federal Rule of Civil Procedure 55 ................................................................................ 5

    B. The Court Has Jurisdiction and Is a Proper Venue .................................................. 6

    C. The Well-Pleaded Complaint Establishes That GBI's Fraudulent Scheme in Connection with Contracts of Sale of Bitcoin, a Commodity in Interstate Commerce, Violated Section 6(c) of the Act and CFTC Regulation 180.1 ........... 7

    D. GBI Is Liable for the Acts of Its Agents, Including Nicholas Gelfman ................. 9

IV. RELIEF REQUESTED ................................................................................................ 9

    A. Permanent Injunction ............................................................................................... 9

    B. An Inquest into Damages Is Unnecessary ............................................................. 11

    C. Restitution .............................................................................................................. 11

    D. Civil Monetary Penalty ......................................................................................... 13

V. CONCLUSION .......................................................................................................... 14

Plaintiff Commodity Futures Trading Commission ("Commission" or "Plaintiff" or "CFTC") respectfully submits this memorandum in support of its Motion for Entry of Final Judgment by Default, Permanent Injunction, Restitution, Civil Monetary Penalty, and Other Statutory and Equitable Relief Against Defendant Gelfman Blueprint, Inc. ("GBI") (the "Motion").

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure ("FRCP") and Rule 55.2(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules"), Plaintiff seeks entry of default judgment in favor of Plaintiff and against Defendant Gelfman Blueprint, Inc. ("GBI") in the form of the accompanying [Proposed] Order and Default Judgment (the "[Proposed] Order and Default Judgment"), on the grounds that GBI failed to answer or otherwise defend against the Complaint. The [Proposed] Order and Default Judgment imposes a permanent injunction, restitution, a civil monetary penalty ("CMP"), and other equitable relief against GBI. In support of its Motion, the Commission relies upon the prior submission of its Complaint,[1] this memorandum, the [Proposed] Order and Default Judgment, the recently filed [proposed] Consent Order as to Defendant Nicholas Gelfman (the "proposed Consent Order"), the Declaration of Gates S. Hurand with its attached exhibits ("Hurand Decl."), and the Declaration of Christoper Giglio with its attached exhibit ("Giglio Decl.").

Entry of both the proposed Order as to GBI and the proposed Consent Order as to Nicholas Gelfman would resolve all claims in this matter.

---

[1] Pursuant to Local Rule 55.2(b), the Commission's Complaint ("Compl.") is attached to the Notice of Motion.

# I. BACKGROUND

On September 21, 2017, the CFTC filed the Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act ("CEA" or the "Act") and Commission Regulations ("Regulations") against GBI and Nicholas Gelfman ("Gelfman") (collectively, "Defendants"). (ECF No. 1 (the "Complaint" or "Compl.").)

GBI was properly served with process on September 25, 2017. (ECF No. 9.) Gelfman was properly served with process on September 26, 2017. (ECF No. 10.)

GBI failed to answer or otherwise move with respect to the Complaint. To date, GBI has not appeared in the case and has not been represented by legal counsel. (Hurand Decl. ¶ 6.) The Clerk of Court entered GBI's default on December 20, 2017. (ECF No. 18.) Pursuant to Local Rule 55.2(b), copies of the Complaint and Summons (i.e., the claim to which no response has been made), Clerk's Certificate of Default, and [Proposed] Order and Default Judgment are submitted with the Motion.

Accordingly, entry of default judgment against GBI pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure is appropriate and should be granted.

# II. FACTS

The Commission incorporates by reference the well-pleaded facts in the Complaint. (ECF No. 1.) As previously stated, Defendant GBI failed to file any responsive pleadings. Therefore, the facts alleged in the Complaint should be taken as true for purposes of this Motion. *See* Fed. R. Civ. P. 8(b). GBI's illegal conduct is also conclusively established by record evidence as set forth below.

### A. Defendants' Fraudulent Scheme

Since at least 2014 through at least January 2016 (the "Relevant Period"), Defendants Gelfman and GBI, by and through its officers, agents, and employees operated a Bitcoin Ponzi

scheme in which they fraudulently solicited participation in a pooled fund that purportedly employed a high-frequency, algorithmic trading strategy, executed by Defendants' computer program called "Jigsaw," to trade the virtual currency Bitcoin, a commodity in interstate commerce. (*E.g.*, Compl. ¶ 1.) During the Relevant Period, Gelfman and GBI obtained more than approximately $600,000 through these fraudulent solicitations from at least eighty customers ("GBI Customers"), who invested amounts ranging from a few hundred dollars to tens of thousands of dollars, for the purpose of entering into contracts of sale of Bitcoin, a virtual currency, through electronic web-based Bitcoin trading platforms located in various states and countries. (*E.g.*, Compl. ¶¶ 1-2, 13-14, 40-42.) In fact, the strategy was fake, the purported performance reports were false, and—as in all Ponzi schemes—payouts of supposed profits to GBI Customers in actuality consisted of other customers' misappropriated funds. (Compl. ¶¶ 1-3, 13-44, 45-63, 64-76.)

Defendants fraudulently solicited potential GBI Customers by making false and misleading claims and omissions about the performance and reliability of Jigsaw. (Compl. ¶¶ 1-2, 13-44.) Then, once GBI Customers invested in the fraudulent scheme, Defendants attempted to conceal their fraudulent solicitations and misappropriation of funds through issuing false reports to GBI Customers. (Compl. ¶¶ 1-3, 45-63.) In this regard, Defendants prepared and conveyed to potential and actual GBI Customers numerous solicitation materials, asset and performance reports, and other materials: (1) misrepresenting that GBI Customers averaged a 7-9% monthly increase in their Bitcoin balances net of all fees through Defendants' risk-protected strategy, when in fact they did not; (2) misrepresenting in individualized performance and balance reports that GBI Customers owned specific amounts of Bitcoin, when in fact those customers did not; and (3) misrepresenting that GBI's assets and performance were audited by a

3

certified public accountant ("CPA"), when in fact they were not. (Compl. ¶¶ 1-3, 14-44, 45-63.) In reality, the strategy was fake, the supposed trading results were illusory, and any payouts of supposed profits to investors in fact were derived from funds fraudulently obtained from other investors. (*Id.*)

In an attempt to conceal the scheme, Gelfman staged a fake computer "hack" that supposedly caused the loss of nearly all GBI Customer funds. (Compl. ¶¶ 3, 69-72.) This was a lie. (*Id.*) In fact, Defendants misappropriated virtually all of the approximately $600,000 solicited from GBI Customers for improper and unauthorized uses, such as to pay GBI business expenses and to wrongfully enrich Gelfman. (Compl. ¶¶ 1-3, 76.) As a result, GBI Customers have lost most if not all of their invested funds due to Defendants' fraud and misappropriation. (*Id.*)

During the Relevant Period, Gelfman was CEO and Head Trader of GBI, solicited investors on behalf of GBI, created and controlled the performance and investment information in solicitation materials, created and controlled the content of GBI's website, oversaw and controlled GBI's trading of Bitcoin, was a signatory to GBI bank accounts, and generated account information on behalf of GBI. (Compl. ¶ 79.) Gelfman also controlled the Jigsaw trading account. (*Id.*) Gelfman acted in the scope of his employment and on behalf of GBI through his actions as CEO and head trader overseeing Bitcoin trading by GBI, managing the purported Jigsaw bot, and calculating GBI purported performance results, and thus profits and fees, as well as through his additional actions of marketing GBI to potential investors, soliciting investors, providing information to the accountant during reviews of GBI's assets under management, and providing account information to GBI Customers. (Compl. ¶ 80.)

### III. ARGUMENT

#### A. Final Judgment by Default Is Warranted Against Defendant GBI Under Federal Rule of Civil Procedure 55

Rule 55 authorizes a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a), (b). This rule "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "A factual allegation will be deemed not well-pleaded only in very narrow, exceptional circumstances." *Verizon Directories Corp. v. AMCAR Transp. Corp.*, No. 05 Civ. 08867, 2008 WL 4891244, at *2 (S.D.N.Y. Nov. 12, 2008) (internal citations and quotations omitted); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973).

Entry of default judgment is left to the sound discretion of the trial court. *Palmieri v. Town of Babylon*, 277 F. App'x 72, 74 (2d Cir. 2008); *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999). Upon a defendant's default, the well-pleaded factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true and establish a defendant's liability. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Although the Court must make a determination regarding damages, an evidentiary hearing "is unnecessary so long as (1) the Court has determined the proper rule for calculating damages, and (2) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment." *CFTC v. 4X Solutions, Inc.*, No. 13-cv-2287, 2015 WL 9943241, at *2 (S.D.N.Y. Dec. 28, 2015) (citations omitted) (report and recommendation). That is, while default establishes the truth of all well-pleaded allegations of liability, a plaintiff

must establish an evidentiary basis for the damages sought. *Brogden v. Bize*, 2014 WL 77479, at *2 (S.D.N.Y. Jan. 8, 2014) (citing *Cement & Concrete Workers Dist. Council v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Although the Court must make an independent determination regarding damages, an evidentiary hearing is not required; rather, the Court may rely on affidavits or documentary evidence in the record to determine the appropriate sum. *Id.*; *see also CFTC v. Efrosman*, No. 05 Civ. 8422, 2007 WL 2125775 (S.D.N.Y. Mar. 27, 2007); *Trs. Of the Operative Plasters and Cement Mason's Int'l Ass'n et al. v. Mimosa Int'l Ltd.*, 10 Civ. 2168, 2013 WL 1718913, at *3 (S.D.N.Y. Apr. 16, 2013) ("an inquest is unnecessary . . . where the amount of damages is liquidated or susceptible of mathematical computation" (internal quotation and citation omitted)); *see also Boritzer v. Calloway*, No. 10 Civ. 6264, 2013 WL 311013, at *14 (S.D.N.Y. Jan. 24, 2013) (inquest on damages unnecessary where plaintiff's damages are a sum certain). All reasonable inferences from the evidence presented are drawn in the moving party's favor. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d at 65.

As to corporate defendants, "'[i]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it.'" *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (quoting *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir.1975)).

Because Defendant GBI is in default (ECF No. 18), default judgment pursuant to Fed. R. Civ. P. 55(b)(2) is appropriate and should now be entered.

### B. The Court Has Jurisdiction and Is a Proper Venue

Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive and other relief in United States district court against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in

any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder, and provides that district courts "shall have jurisdiction to entertain such actions." Here, the Commission has the authority to bring this action, and this Court has jurisdiction to entertain it, because, as described in the Complaint, it appears that Defendants GBI and Gelfman engaged in acts and practices constituting violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a). This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (2012) (federal question) and 28 U.S.C. § 1345 (2012) (United States as Plaintiff).

With respect to personal jurisdiction, GBI is a New York corporation based in Staten Island, New York (Compl. ¶ 10), that did business in Staten Island, Manhattan, and elsewhere (*e.g.*, Compl. ¶ 14). Pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure, GBI was served personally via the New York Secretary of State, a registered agent of GBI.[2] (ECF No. 9.)

Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants are found in, inhabit, or transact business in this District, and because acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District, such as, for instance, solicitation of customers alleged in paragraphs 14 and 40 of the Complaint.

### C. The Well-Pleaded Complaint Establishes That GBI's Fraudulent Scheme in Connection with Contracts of Sale of Bitcoin, a Commodity in Interstate Commerce, Violated Section 6(c) of the Act and CFTC Regulation 180.1

7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) make it unlawful for any person, in connection with contracts of sale of any commodity in interstate commerce, including virtual currencies such as Bitcoin, to intentionally or recklessly: (1) use or employ, or attempt to use or employ,

---

[2] N.Y. Bus. Corp. Law §§ 304(a), 306(a) (service on New York corporations via the New York Secretary of State); 7 U.S.C. § 13a-1(a) and (e) (enforcement provision for actions by CFTC providing for nationwide service of process); *CFTC v. Worldwide Commodity Corp.*, 366 F. Supp. 2d 276, 280-83 (E.D. Pa. 2005) (where nationwide service is provided by statute, relevant forum for jurisdictional analysis is the United States); *e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (for corporations, place of incorporation and principal place of business are paradigmatic bases for general personal jurisdiction) (internal quotations omitted).

7

any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person. Virtual currencies such as Bitcoin are encompassed in the definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012). *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 217 (E.D.N.Y. 2018); *CFTC v. Gillespie*, No. 18-cv-10077, ECF No. 106, at 4-9 (D. Mass. Sept. 26, 2018) (denial of motion to dismiss).

By the conduct described in the Complaint, Defendant GBI, by and through its officers, employees, or agents, intentionally or recklessly, in connection with contracts of sale of any commodity in interstate commerce, namely the virtual currency Bitcoin: (1) used or employed, or attempted to use or employ, a manipulative device, scheme, or artifice to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; and (3) engaged, or attempted to engage, in an act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of 7 U.S.C. § 9(1)(a) and 17 C.F.R. § 180.1(a).

Defendant GBI, as set forth in the Complaint, cheated and defrauded, and attempted to cheat and defraud, customers, in connection with contracts of sale of bitcoin, a commodity in interstate commerce. Defendant GBI misrepresented that Defendants would trade Bitcoin through a highly successful and reliable algorithmic trading "bot," and that customers would achieve returns of 7-9%, or even higher, per month. Defendant GBI also misappropriated

customer funds and never achieved the advertised results with GBI customer funds. Defendants further concealed and perpetuated their fraud by falsely stating that their website was hacked.

### D. GBI Is Liable for the Acts of Its Agents, Including Nicholas Gelfman

The acts, omissions, and failures of GBI officers, employees, and agents described in the Complaint occurred within the scope of their agency, employment, and office at GBI, including but not limited to Defendant Nicholas Gelfman. Accordingly, GBI is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2017), as principal for its agents' acts, omissions, or failures in violation of 7 U.S.C. § 9(1)(a) and 17 C.F.R. § 180.1(a). *See, e.g.*, *CFTC v. McDonnell*, No. 18 Civ. 361, 2018 WL 4090784, at *50 (E.D.N.Y. Aug. 28, 2018) (7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 "impose strict liability on a principal for acts and omissions by its agent who acts within the scope of their employment or office").

## IV. RELIEF REQUESTED

Plaintiff respectfully seeks permanent injunctive relief, restitution, and a civil monetary penalty as set forth in the [Proposed] Order and Default Judgment submitted herewith.

### A. Permanent Injunction

Unlike private actions for injunctive relief, which are rooted in the equity jurisdiction of the federal courts, Commission suits for injunctive relief are creatures of statute. *See* Section 6c of the Act, 7 U.S.C. § 13a-1(a) (2012). The statutory injunctive relief contemplated in 7 U.S.C. § 13a-1(a) is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct. "The Commission, like the SEC in the securities area, is the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets." *CFTC v. British Am. Commodity Options Corp.*,

560 F.2d 135, 142 (2d Cir. 1977) (quoting *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975)).[3]

The Commission is entitled to injunctive relief upon a showing that a violation has occurred and that there is a reasonable likelihood of future violations. *British Am. Commodity Options*, 560 F.2d at 141; *see also SEC v. Aaron*, 605 F.2d 612, 623 (2d Cir. 1979) (noting that the "critical question in determining whether the public interest requires the imposition of a permanent injunction is whether there is a reasonable likelihood that the wrong will be repeated") (internal quotation marks omitted)). In determining whether a "reasonable likelihood" of future violations exists, courts generally consider the egregiousness of the defendant's actions; the isolated, recurrent, or systematic nature of the violations; the degree of scienter involved; the defendant's recognition of the wrongfulness of the conduct; and the likelihood that the defendant's customary business activities will present opportunities for future violations. *See Mgmt. Dynamics*, 515 F.2d at 807; *see also SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978). "[T]he likelihood of future violations of law can be inferred from defendants' past illegal conduct." *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 677 (S.D.N.Y. 1979).

As set forth above, GBI by and through its officers, employees, and agents repeatedly violated the CEA by intentionally or recklessly engaging in a scheme to defraud involving the virtual currency bitcoin. GBI engaged in illegal conduct throughout the Relevant Period, and fraudulently solicited and accepted hundreds of thousands of dollars in funds from over 80

---

[3] For these reasons, restrictive concepts ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable. *See CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *British Am. Commodity Options Corp.*, 560 F.2d at 141-42.

customers. (*See also* Compl. ¶¶ 1-3; Hurand Decl. ¶ 9.) Given GBI's sustained misconduct and fraud, and high degree of scienter, a permanent injunction as to Defendant GBI is warranted.

### B. An Inquest into Damages Is Unnecessary

As mentioned above, in making its independent determination as to damages, the Court may rely on affidavits or documentary evidence, and an evidentiary hearing is not required. *E.g.*, *Brogden v. Bize*, 12 Civ. 1204, 2014 WL 77479, at *2 (citations omitted); *CFTC v. Efrosman*, 2007 WL 2125775 (citations omitted); *Mimosa Int'l Ltd.*, 2013 WL 1718913, at *3; *see also Boritzer*, 2013 WL 311013, at *14. Here, a hearing pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure is not necessary because the Court has been provided with declarations in support of the restitution and civil monetary penalty, and the restitution and civil monetary the Commission is requesting are susceptible to mathematical computation, as reflected in the accompanying declarations and exhibit. (*See* Giglio Decl. ¶¶ 5-9 and Exhibit A; *see also* Hurand Decl. ¶¶ 15-20.) In light of the facts established above, and based on the well-pleaded allegations of the Complaint and the declarations submitted herewith, the Commission respectfully submits that final judgment by default against GBI as requested herein is warranted and should be entered.

### C. Restitution

"The Court's authority to order restitution is ancillary to the Court's authority to order injunctive relief under § 6c of the Act." *CFTC v. Rolando*, 589 F. Supp. 2d 159, 172 (D. Conn. 2008); *see also FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 533 (S.D.N.Y. 2000); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) (the district court "has broad equitable power to fashion appropriate remedies"). Section 6c(d)(3) of the Act, 7 U.S.C.§ 13a-1(d)(3) (2012), specifically authorizes courts to order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." The Court's

determination of restitution in this case is governed by its equitable powers to make whole the victims of Defendants' fraud. The pervasive and systemic nature of Defendants' fraudulent acts should require them to make full restitution. *See, e.g.*, *CFTC v. EJS Capital Mgmt., LLC*, No. 14-3107 (CM), 2015 WL 13359358, at *8-9 (S.D.N.Y. Dec. 18, 2015) (awarding as restitution full amount received by defendants from customers for forex trading, minus amounts returned to customers); *CFTC v. Friedlander*, No. 03-cv-8319, 2007 WL 858768, at *5 (S.D.N.Y. Feb. 20, 2007) (consent order imposing full restitution).

Pursuant to 7 U.S.C. § 13a-1(d)(3)(A), restitution is calculated as the amount of losses proximately caused by such violation. Here, the losses proximately caused by GBI's violations are at least $554,734.48, computed, as set forth in the Giglio Decl. and Hurand Decl. submitted herewith, as the sum of losses by customers who were fraudulently solicited by GBI and who made principal investments in excess of the funds returned to them by GBI. (Hurand Decl. ¶¶ 15-16, 20; Giglio Decl. ¶¶ 5-9 and Ex. A.[4]) Accordingly, the Commission respectfully requests that the Court order GBI to make restitution in the amount of $554,734.48, plus post-judgment interest. Post-judgment interest should be paid at the then-prevailing Treasury Bill rate, pursuant to 28 U.S.C. § 1961 (2012).[5] The Commission also requests that the National Futures Association be appointed monitor to supervise the distribution of restitution funds to Defendants' customers. Given the proposed Consent Order as to Defendant Nicholas Gelfman submitted herewith, the Commission requests that GBI and Nicholas Gelfman each receive dollar-for-dollar credit against each's applicable restitution obligation in this matter for amounts disbursed to customers as a result of satisfaction of the other's restitution obligation.

---

[4] The proposed restitution calculation conservatively did not include GBI partners or certain amounts apparently credited for referrals.

[5] For reference, the applicable prevailing Treasury Bill rate as of September 26, 2018, was approximately 2.58%.

### D. Civil Monetary Penalty

The Court has jurisdiction to impose, on any person found to have committed any violation of the Act, a CMP in the amount of not more than the greater of $177,501 per violation or triple the monetary gain to the person for each violation. *See* 7 U.S.C. § 13a-1(d)(1)(A) (2012); Commission Regulation 143.8(b)(1), 17 C.F.R. § 143.8(b)(1) (2018).

The Court should fashion a CMP appropriate to the gravity of the offense and sufficient to act as a deterrent. *See Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999). The ability of a defendant to repay the penalty "is not a relevant consideration." *CFTC v. Aurifex Commodities Trading Co.*, No. 06-cv-166, 2008 WL 299002, at *12 (W.D. Mich. Feb. 1, 2008). "In determining how extensive the fine for violations of the Act ought to be, courts and the Commission have focused upon the nature of the violations." *CFTC v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 384 (W.D.N.C. 2012) (internal quotation marks and citations omitted). Conduct that violates the core provisions of the Act, such as customer fraud, is considered very serious. *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995).

Here, GBI's intentional fraudulent conduct resulted in a gain to GBI of more than $618,000, which is the monetary gain to GBI—i.e., the gross amount of funds GBI misappropriated from more than 80 customers (Hurand Decl. ¶¶ 15-16, 20; Giglio Decl. ¶¶ 5-9 and Ex. A), all of which funds were fraudulently solicited and were used or intended to be used by Defendants for their own benefit or for the benefit of the fraud, including by using funds to make Ponzi-like or similar payments to customers to perpetuate the scheme. *E.g.*, *CFTC v. Dean*, No. 18 Civ. 00345, 2018 WL 4573029, at *12 (E.D.N.Y. July 9, 2018) (default judgment) (imposing CMP of triple the gross amount of customer funds fraudulently obtained by Defendants and used for their own benefit or for the benefit of the fraud). Throughout the scheme, Defendants covered up their fraud by concealing facts that would have alerted

customers to the scheme, and by providing them with false account statements and making other misrepresentations.

In light of the unjust gains to GBI and the egregiousness of GBI's intentional conduct, the Commission seeks, in order to reflect the gravity of the offense as well as to act as a deterrent, to impose a CMP of triple the monetary gain to GBI—i.e., $1,854,000.00, plus post-judgment interest.[6] *See, e.g.*, *McDonnell*, 2018 WL 4090784, at *54 (after trial, imposing CMP of triple the gain); *CFTC v. Dean*, 2018 WL 4573029, at *12 (default) (imposing CMP of triple the gain); *CFTC v. Hays*, No. 09-cv-259, 2011 WL 311366, at *4 (D. Minn. Jan. 28, 2011) (imposing CMP of triple the gain); *CFTC v. Emerald Worldwide Holdings, Inc.*, No. 03-cv-8339, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) (imposing CMP of approximately triple the gain).

Therefore, Plaintiff respectfully requests that GBI be required to pay a CMP in the amount of $1,854,000, plus post-judgment interest, which reflects the gravity of the violations and equals triple the gain to GBI of in excess of $618,000, as noted above.

## V. CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant the Commission's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief Against Defendant Gelfman Blueprint, Inc.; enter final judgment against Defendant GBI; and issue an order and judgment in the form of the [Proposed] Order and Default Judgment accompanying the Motion.

* * *

---

[6] As mentioned above, post-judgment interest should be paid at the then-prevailing Treasury Bill rate, pursuant to 28 U.S.C. § 1961 (2012).

Dated: October 1, 2018

**COMMODITY FUTURES TRADING COMMISSION**

By: <u>/s/ Gates S. Hurand</u>
Gates S. Hurand
K. Brent Tomer
Commodity Futures Trading Commission
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005
Phone: (646) 746-9700
Fax: (646) 746-9940

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION